```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

DARLENE C. MARTIN
and JAMES MARTIN,

       Plaintiffs,

v.                         Civil Action No. 2:18-cv-01075

BELK INC. and
DOE 1,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is the motion for summary judgment filed by defendant Belk Inc. ("Belk") on May 17, 2019.

## I. Background

On or about May 23, 2016, plaintiff Darlene C. Martin, a resident of West Virginia, was trying on shoes at the Wood County, West Virginia location of defendant Belk, a corporation with its principal place of business in North Carolina. Compl., ECF No. 2-2, ¶¶ 1-3, 10, 12. A Belk employee, who is named as Doe 1 in the complaint and is later identified as Ms. Carmen Eddy, was helping Ms. Martin try on shoes on the date in question. Id. ¶ 12, Pls.' Resp., ECF No. 22, at 3.[1]

---

[1] The complaint states that Doe 1 was unknown to the plaintiffs at the time of filing and that plaintiff "will amend th[e]

Upon trying on a pair of high-heeled shoes, Ms. Martin asked Ms. Eddy about the location of a mirror she might use, and Ms. Eddy directed her to a mirror in front of the cash register some distance away from where she was standing. <u>See</u> Martin Dep., ECF No. 20-1, at p. 20; Eddy Dep., ECF No. 22-1, at p. 13. As she was looking for the mirror to which Ms. Eddy directed her, Ms. Martin fell to the ground. Martin Dep., ECF No. 20-1, at p. 20-21; <u>see</u> Video of Fall, ECF No. 20-2 (showing the video of Ms. Martin falling to the floor). Ms. Martin asserts that "there was a mirror behind the chair where I sat down" and that she, and "apparently," Ms. Eddy, did not know about it. Martin Dep., ECF No. 20-1, at p. 41.

Ms. Eddy acknowledged that there were three portable mirrors in the store but that she did not know where each of them was located, and that she had no reason to dispute Ms. Martin's statement that she saw a mirror behind where she was originally seated. Eddy Dep., ECF No. 22-1, at p. 12, 36. Ms. Eddy also admitted that she could not recall whether she offered to assist Ms. Martin try on shoes on the date in question but that it was part of Belk's policy to assist customers in trying

---

complaint to show true names and capacities when they have been ascertained." Compl., ECF No. 2-2, ¶ 4. The complaint has not been amended to include Ms. Eddy as a defendant.

on shoes and to make portable mirrors available to them. Id. at 33-34.

When Ms. Martin began to walk, she was looking for the mirror and not at the floor, and she stated that she did not see anything on the floor that was a hazard or tripping danger. Martin Dep., ECF. No. 20-1, p. 37, 40. After she fell, she noticed, for the first time, that there were wrinkles in the carpet, although she could not recall how deep the wrinkles were or how many there were. Id. at 38. Ms. Martin also acknowledged that there was nothing covering the wrinkles or hiding them from view. Id. Ms. Martin believes that the "shoe, possibly the heel, caught on the wrinkle," causing her to fall. Id. at 40.

Plaintiffs contend in their complaint that Ms. Eddy should have known there was a nearby mirror that Ms. Martin could have used which would have prevented her from having to walk over the wrinkled carpet, but Ms. Eddy directed Ms. Martin to walk to a more distant mirror "across" the carpet that she "knew or should have known . . . contained an unknown and unseen dangerous condition." Compl., ECF No. 2-2, ¶¶ 16-17. Plaintiffs allege that "Defendants knew or should have known of the hazard that created a dangerous condition for Mrs. Martin and neglected to give adequate notice of its presence." Id. ¶

22. The complaint further states that "Belk was . . . negligent, careless and/or reckless in hiring, failing to properly supervise and failing to adequately monitor the activities of Doe 1, and was further negligent, careless and/or reckless in failing to have and/or enforce adequate policies, procedures and guidelines to prevent the above-described negligent activities." Id. ¶ 24. Belk is also alleged to be vicariously liable for the acts of Doe 1 as her employer. Id. ¶ 9.

Plaintiffs seek compensatory and future damages for the harms caused to Ms. Martin. Id. ¶¶ 28-29. They further seek damages for James Martin, Ms. Martin's husband, who suffered the loss of care, companionship and service of his wife and "will continue to suffer the loss of care, companionship and services of his wife." Id. ¶¶ 30-31. Plaintiffs also request punitive damages. Id. at 5-6.

Plaintiffs initiated this action in the Circuit Court of Wood County, West Virginia on May 17, 2018. Belk removed the matter to this court on June 22, 2018 pursuant to 28 U.S.C. § 1332. After conducting discovery, Belk filed its motion for summary judgment, to which the plaintiffs have responded, and Belk has filed its reply.

Belk contends that it is entitled to summary judgment on plaintiffs' negligence claim inasmuch as Ms. Martin "cannot identify the cause of her fall and link it to an act or omission of Defendant." Belk's Mem. Supp. Mot. Summary J. ("Belk's Mem."), ECF No. 20, at 1. Belk further asserts that "the only condition identified by Plaintiff as potentially causing her fall, wrinkling in the carpet, was an open and obvious condition." Id.

## II. Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out

to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

III. Discussion

Under West Virginia law, in order to recover damages for negligence a plaintiff must show that (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and (3) the breach proximately caused plaintiff's injury. Senkus v. Moore, 207 W. Va. 659, 662, 535 S.E.2d 724, 727 (2000); Atkinson v. Harman, 151 W. Va. 1025, 1031, 158 S.E.2d 169, 173 (1967). For premises liability cases in West Virginia, landowners or

possessors owe any non-trespassers "the duty of reasonable care to have and keep [the] premises in safe condition." Sesler v. Rolfe Coal & Coke Co., 51 W. Va. 318, 41 S.E. 216 (1902); see also Syl. Pt. 4, Mallett v. Pickens, 206 W. Va. 145, 522 S.E.2d 436 (1999) (abolishing the distinction between invitees and licensees in West Virginia).

West Virginia Code § 55-7-28, acknowledged by both parties as the law controlling the "open and obvious" doctrine, states in pertinent part:

> (a) A possessor of real property, including an owner, lessee or other lawful occupant, owes no duty of care to protect others against dangers that are open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, and shall not be held liable for civil damages for any injuries sustained as a result of such dangers.

The Supreme Court of Appeals of West Virginia has also approvingly quoted treatise law:

> In 65 C.J.S. Negligence § 50, the text contains this language: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." In 38 Am. Jur., Negligence, § 97, the principle is expressed in these terms: "There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant."

Burdette v. Burdette, 147 W. Va. 313, 318, 127 S.E.2d 249, 252 (1962). As explained in McDonald v. University of West Virginia Bd. of Trustees, "an owner of business premises is not legally responsible for every fall which occurs on his premises. He is only liable if he allows some hidden, unnatural condition to exist which precipitates the fall. He is not responsible if some small characteristic, commonly known to be a part of the nature of the premises, precipitates the fall." 191 W. Va. 179, 182, 444 S.E.2d 57, 60 (1994).

Here, there is no dispute that Belk owed Ms. Martin a duty of care inasmuch as she was a non-trespassing entrant onto Belk's property. See Mallett 206 W. Va. at 155, 522 S.E.2d at 446 ("[L]andowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances.").

Plaintiffs claim that the defects in the carpet were not open and obvious inasmuch as Ms. Martin had no knowledge of the dangerous condition of the carpet and that such defects were in the "nature of hidden dangers, traps, snares, pitfalls and the like, in that they are not known to the invitee, and would not be observed by [her] in the exercise of ordinary care." Pls.' Resp., ECF No. 22, at 11 (quoting Burdette, 147 W. Va. at 318, 127 S.E.2d at 252 (citation omitted)).

Here, the photographs attached as Exhibit 3 to Belk's memorandum in support of its motion for summary judgment, which were taken on the date of Ms. Martin's fall, show that the carpet has some low level wrinkles. ECF No. 20-3; Pls.' Resp., ECF No. 22, at 2 ("[T]he photos in Doc. #20-3 were taken by Mr. Martin on the date of Plaintiff's fall.") Ms. Eddy also acknowledged in her deposition that she was aware of the wrinkles in the carpet prior to Ms. Martin's fall. See e.g., Eddy Dep., ECF No. 22-1, at p. 30-31, 42, 63 (agreeing with plaintiffs' counsel's contention that at the time Ms. Martin fell, the carpet "was worn and not fully adhered to the floor allowing the wrinkles that are demonstrated" in the photograph).

Belk notes that Ms. Martin admitted there was nothing covering or hiding the wrinkles in the carpet. Martin Dep., ECF No. 20-1, at p. 38. Conversely, Ms. Martin acknowledged that on the date she fell she did not see anything on the floor that was a "hazard or tripping danger or anything." Id. at 37. Then, according to Ms. Martin's deposition testimony, after she fell she noticed, for the first time, that there were wrinkles in the carpet. Id. at 38.

In viewing the record and making all inferences in favor of the plaintiffs, as the court must at this stage, it cannot be said as a matter of law that there is no genuine issue

9

of material fact as to whether the conditions of the carpet were hazards that were "open and obvious." It is true that the wrinkles can be seen in the photographs, which focus on the wrinkles and were taken on the date of and just after Ms. Martin's fall. Indeed, Ms. Eddy, who has been working in the location for eleven years, was aware of their existence. Ms. Martin, although she was a frequent shopper at Belk, claimed that she noticed the wrinkles in the carpet only after her fall. A reasonable factfinder could find that these small defects in the carpet were dangers not "open, obvious, [or] reasonably apparent" to the person injured. W. Va. Code § 55-7-28(a). Accordingly, Belk is not entitled to summary judgment on the ground that the condition of the carpet was open and obvious or that its condition was reasonably apparent.

Belk alternatively contends that "Plaintiff cannot identify an act or omission committed by [Belk] that proximately caused her fall." Belk's Mem., ECF No. 20, at 6. However, as noted above, landowners have a duty to protect invitees from defects or dangers that are not "open and obvious" and to keep the premises in a reasonably safe condition. Belk states in its reply that "Plaintiff has not identified any hidden defects in the record nor has she identified anyone with knowledge of said defects who failed to warn Plaintiff about them." ECF No. 23,

at 3-4. Inasmuch as the court has found that there is a genuine issue of material fact as to whether the wrinkling in the carpet was an open and obvious hazard, Belk's failure to cure or warn invitees of that defect might have been a breach of its duty to Ms. Martin.

The remaining issue that Belk raises is whether the wrinkles caused Ms. Martin to fall. Belk notes that Ms. Martin never felt or saw her shoe catch on a wrinkle, and that she only formed the "hypothesis" that the wrinkles tripped her after she fell. Belk's Mem., ECF No. 20, at 2-3, 6 (citing Martin Dep., ECF No. 20-1, at p. 40). Belk further states that Ms. Martin could not say how tall or deep the wrinkles were. Id. at 2 (citing Martin Dep., ECF No. 20-1, at p. 38).

Additionally, in support of its contention that the wrinkles in the carpet "could not have caused Plaintiff to trip," Belk's Reply, ECF No. 23, at 4, Belk refers to the deposition of Ms. Eddy, as well as certain photographs and videos submitted by them. Notably, Ms. Eddy recognized that when she vacuums the carpet over the wrinkles in the area where Ms. Martin fell, the vacuum does not bounce, that she has never seen the carpet move when heavy carts are pushed over the wrinkles and that she does not believe the wrinkles were big enough for one to catch one's foot and trip or that the wrinkles

are a safety issue. Eddy Dep., ECF No. 20-1, at p. 52-56. Ms. Eddy also testified that in the eleven years she has worked at Belk, no one else has fallen and she has never had any problems walking over that carpeted area. Id. at 6, 51-52, 56.

Further, Belk contends that the pictures submitted by both parties "show the carpet to be worn with some wrinkling, however, the wrinkles are flat such that they are not tripping hazards." Belk's Reply, ECF No. 23, at 2; see ECF No. 20-3. Belk also argues that the video of Ms. Martin's fall "shows that there were no obstacles or other hazards in Plaintiff's walking path." Belk's Reply, ECF No. 23, at 2; Video of Fall, ECF No. 20-2. Belk provided additional video and photographs that it asserts demonstrate that there "is no depth to [the wrinkles] such that they would catch a shoe. Indeed, during the inspection video, an individual can be seen easily walking through the area where Martin fell." Belk's Mem., ECF No. 20, at 3 (citing ECF Nos. 20-5, 20-6).

While Ms. Martin did not feel herself trip on the wrinkles in the carpeting, she identified the wrinkles as the likely cause of her fall. The video of her fall appears to the court to be inconclusive as to its cause. Also, the pictures of the carpet on the relevant date, filed by Belk, do not definitively show that the wrinkles in the carpet were "flat"

12

and that a person, especially a person in high-heeled shoes, could not trip on them. Additionally, the fact that no other person has tripped on the wrinkles is not alone determinative in this case nor is the fact that Ms. Martin only "hypothesizes" that the wrinkles caused her to fall.

In order for its motion for summary judgment to be granted on the grounds of causation, Belk must show that there is no genuine issue of material fact as to the cause of Ms. Martin's fall. Inasmuch as the video and photographic evidence do not conclusively establish that Ms. Martin could not have or did not trip on the wrinkles, any further determination of the cause of her fall would likely be based on weighing the credibility of Ms. Martin and Ms. Eddy, which the court is not permitted to do at the summary judgment stage. See Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). For these reasons, when viewing the record in the light most favorable to the non-moving party, there remains a genuine question of material fact as to whether the wrinkles in the carpet caused Ms. Martin's fall.

IV. Conclusion

In view of the foregoing, it is ORDERED that Belk's motion for summary judgment be, and it hereby is, denied.

The Clerk is directed to transmit this memorandum opinion and order to all counsel of record.

ENTER: August 1, 2019

John T. Copenhaver, Jr.
Senior United States District Judge